**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2096**

MARGARET SHINABERRY,

        Plaintiff - Appellant,

    v.

ANDREW SAUL,

        Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland at Baltimore. Stephanie A. Gallagher, Magistrate Judge. (1:17-cv-01376-SAG)

Argued: December 10, 2019                     Decided: February 26, 2020

Before MOTZ and KEENAN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Traxler wrote the opinion, in which Judge Motz and Judge Keenan joined.

**ARGUED:** Jeffrey R. Scholnick, SILVERMAN THOMPSON SLUTKIN WHITE, Towson, Maryland, for Appellant. David Nathaniel Mervis, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:** Robert K. Hur, United States Attorney, Amy Rigney, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

TRAXLER, Senior Circuit Judge:

Margaret Shinaberry appeals the district court's decision upholding an administrative law judge's denial of her application for Social Security disability benefits. We affirm.

I.

In 2013, Shinaberry applied for social security disability benefits. She claims that she has been unable to engage in any substantial gainful employment since November 2013, due to a combination of her back and shoulder impairments and a lifelong learning disorder. The Social Security Administration ("SSA") denied her claim. At Shinaberry's request, an administrative law judge ("ALJ") held a hearing on her claim, during which Shinaberry and a vocational expert testified. Shinaberry's medical and psychological records were also considered, and the record was left open to receive Shinaberry's education records and a medical report from Kristina Matthews, PA-C, a physician assistant who treated Shinaberry for her physical impairments.

Shinaberry was evaluated by SSA medical consultants, who found that Shinaberry was physically capable of performing light work, as defined in 20 C.F.R. § 404.1567(b), with occasional postural limitations.[1] Shinaberry was also evaluated by SSA psychological

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

consultants, who found that she had a borderline intellectual disability and moderate difficulties in maintaining concentration, persistence or pace. In addition, Dr. Kenneth Burlingame performed a consultative psychological evaluation of Shinaberry. Shinaberry graduated from high school with a 2.467 GPA and a class rank of 203/455. She attended special education classes for math and reading comprehension while in school. After graduating, she worked for approximately 30 years. Her work history includes employment as a cashier and sales associate at Lowes Home Improvement, and as a sales associate at Sports Authority. She retired from a local school system, where she worked for approximately twenty years, first as a custodian and later as a preventive maintenance technician. Shinaberry was 51 years old at the time of the hearing.

A.

When considering whether an individual is disabled under the Social Security Act, the ALJ must follow a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). We summarized this process in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

---

limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

3

*Id.* at 634. The burden lies with the claimant to make the requisite showing at the first three steps. *See Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant prevails at steps one through three, she is disabled. *See id.* But if the claimant fails at step three, the ALJ "must determine the claimant's residual functional capacity (RFC), which is the most the claimant can still do despite physical and mental limitations that affect [her] ability to work." *Id.* (internal quotation marks omitted).

> In making this assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis, including the functions listed in the regulations. Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work.
>
> In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two. He also must consider all the claimant's symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. When the medical signs or laboratory findings show that the claimant has a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms so that the ALJ can determine how [her] symptoms limit [her] capacity for work.

*Id.* (internal quotation marks, citations, alterations and footnote omitted).

Once the ALJ has identified the claimant's functional limitations, the ALJ proceeds to step four and determines whether the claimant has proven that she is unable to perform past work. If so, the ALJ proceeds to step five, where "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's [RFC], age, education, and work experience." *Id.* at 180 (internal quotation

marks omitted).  At this step, the ALJ often considers "the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."  *Id.* (internal quotation marks omitted).

B.

In this case, the ALJ issued a comprehensive decision denying Shinaberry's claim for disability benefits.  The ALJ's findings with regard to the first three steps are not in dispute.  The ALJ found that Shinaberry was not working and that she has the following severe impairments:  (1) obesity; (2) degenerative disc disease of the cervical and the lumbar spine; (3) status post left shoulder rotator cuff tear; and (4) borderline intellectual functioning.  However, Shinaberry did not have a physical or mental listed impairment or its equivalent that would qualify her for benefits at step three.  Therefore, the ALJ proceeded to the RFC analysis.

The ALJ first addressed the medical evidence and Shinaberry's physical limitations. The ALJ credited the opinions of the SSA physicians that she could perform work at the light exertional level with occasional postural limitations, but added four other limitations based upon the other evidence:  Shinaberry (1) "can never climb ladders, ropes, or scaffolds"; (2) "can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl"; (3) "is limited to occasionally reaching overhead on the left, non-dominant side"; and (4) "is limited to occasionally operating foot controls bilaterally."  A.R. 28.[2]  The ALJ also considered Shinaberry's testimony, but explained that her "statements concerning the

---

[2] Citations to the administrative record are abbreviated "A.R."

intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." A.R. 29

Turning to Shinaberry's mental impairments, the ALJ found that Shinaberry "has the severe mental impairment of borderline intellectual functioning." A.R. 30. The ALJ considered Shinaberry's testimony, her education records, and her mental status examination, including the finding at step three that she has moderate limitations in her concentration, persistence, or pace, and explained that Shinaberry's borderline intellectual functioning "support[s] the additional mental limitation restricting the claimant to jobs requiring only simple, routine, repetitive tasks." A.R. 33.

With the assistance of the vocational expert's testimony, based upon a hypothetical incorporating Shinaberry's age, education, work experience, and RFC despite her physical and mental limitations, the ALJ found that Shinaberry could not perform her past relevant work. However, the ALJ found that Shinaberry could find other work in the economy – specifically the positions of Sales Attendant and Order Clerk – as testified to by the vocational expert. Therefore, the ALJ denied disability benefits. On review, the district court upheld the ALJ's decision. This appeal followed.

II.

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the

6

applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151-52 (2019) (quoting 42 U.S.C. § 405(g)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id*. at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). We review the district court's decision de novo. *See Mascio*, 780 F.3d at 634. "We will affirm the Social Security Administration's disability determination when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Id*. (internal quotation marks omitted).

## A.

Shinaberry argues that the ALJ erred in the analysis of the mental limitations in her RFC because the ALJ did not include Shinaberry's "moderate limitations in concentration, persistence or pace" (found earlier in the sequential evaluation process) in the RFC or the hypothetical question posed to the vocational expert. Relying on our decision in *Mascio*, Shinaberry argues that this omission rendered it impossible for us to conduct a meaningful review of the ALJ's decision and requires us to remand for further evaluation. *See* 780 F.3d at 637-38. We disagree.

In *Mascio*, the ALJ found that the claimant, who suffered from an adjustment disorder, had moderate limitations in concentration, persistence and pace. But unlike here, the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" when he conducted the function-by-function analysis, *id*. at 633, and "said nothing about Mascio's mental limitations" in the hypothetical posed to the vocational expert, *id*. at 637. "[B]ecause the ALJ . . . gave no explanation" for these omissions, "a remand [was] in order." *Id*. at 638.

In doing so, we agreed with our sister circuits that an ALJ cannot summarily "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," because "the ability to perform simple tasks differs from the ability to stay on task." *Id*. at 638. But we did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an "ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation" in the claimant's RFC. *Id*. "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id*.

Nor do our sister circuits impose such a per se rule. "[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Hypothetical questions can also "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Id.* "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Biestek*, 139 S. Ct. at 1157; *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting argument that remand was required under *Mascio* because the ALJ failed to specifically account for claimant's moderate difficulties with regard to concentration, persistence and pace, because more detailed medical findings provided substantial support for the RFC limitations).

Here, the ALJ discussed in detail the psychological evaluations performed by the SSA psychological consultants and Dr. Burlingame, as well as Shinaberry's adult function report, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's borderline intellectual disability and her moderate limitations in her concentration, persistence or pace:

> The undersigned gives great weight to the State agency psychological consultants' mental assessments at the initial (James Levasseur, Ph.D.) and reconsideration (Robert Hodes, Ph.D.) levels stating that the claimant would be moderately limited in performing complex tasks. The undersigned gives great weight to these assessments because they are consistent with . . . the psychological consultative examination [performed by Dr. Burlingame].
>
> The undersigned gives great weight to the January 14, 2014 opinion expressed by Kenneth Burlingame, Ph.D., following the psychological consultative examination. Dr. Burlingame opined that the claimant would have limits in her ability to complete a workweek in a job requiring reading and math calculation, because of her weakness in her processing skills. He further opined that her concentration and task persistence were adequate, her mood and affect were good, and she would be capable of managing benefits, should they be awarded. The undersigned gives great weight to this opinion

because it is consistent with Dr. Burlingame's examination results and with the evidence of record. During the psychological consultative examination, the claimant could not spell world backwards and could not do the serial seven subtractions. The claimant could carry out concrete, three step directions, and could read and follow simple commands. Treatment records show that the claimant's overall cognitive functioning was intact.

The undersigned has accounted for the claimant's limitations tolerating work-related stresses and in verbal requirements and math calculations by limiting the claimant to unskilled work requiring simple, routine, and repetitive tasks, as these limitations comport with the claimant's abilities as supported by the objective examination, such as her ability to read and follow a simple command.

J.A. 32 (citations omitted). The ALJ also considered Shinaberry's education, GPA, class rank, and IQ scores, as well as Shinaberry's statements that "she does not know how long she can pay attention, sometimes finishes what she starts, and follows spoken instructions not the best." J.A. 33 (internal quotation marks omitted). The ALJ explained that "[t]hese statements, combined with the claimant's trouble with memory tasks as noted during the psychological consultative examination, [also] support the additional mental limitation restricting the claimant to jobs requiring only simple, routine, repetitive tasks." J.A. 33.

In sum, and unlike in *Mascio*, the ALJ in this case addressed Shinaberry's lifelong, borderline intellectual disability, including her moderate limitations in concentration, persistence, or pace. The ALJ explained why the psychological evidence and Shinaberry's statements support a mental limitation to simple, routine, and repetitive tasks. And the ALJ included the mental limitation in the hypothetical question posed to the vocational expert. Moreover, while Shinaberry's severe impairments include her borderline intellectual functioning, she had been gainfully employed for decades despite her mental limitations.

10

Accordingly, we hold that the ALJ's findings and the mental limitation included in the RFC are sufficiently explained and supported by substantial evidence in the record.[3]

B.

Shinaberry next challenges the ALJ's finding that she can perform light work despite her physical limitations. She argues that the ALJ erred in finding that her testimony was not fully credible, erred in giving only minimal weight to the medical report from Kristina Matthews, and erred in failing to include a sit/stand option in the RFC assessment.

"In reviewing for substantial evidence" in support of an ALJ's factual findings, "we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," we defer to the ALJ's decision. *Id.* (internal quotation marks omitted).

We hold that the ALJ's decision is supported by substantial evidence in the record. The ALJ exhaustively reviewed Shinaberry's testimony, her treatment records, and the evaluations by the SSA physicians. The ALJ generally credited the SSA physicians'

---

[3] Shinaberry also takes issue with the ALJ's crediting of the SSA psychologists' opinions because they did not specifically reference Shinaberry's claim that she was placed in special education classes. We see no indication that Shinaberry challenged the psychologists' opinions on this basis before the ALJ or the district court. But even if she had, this would not change the outcome. Shinaberry does not argue that the ALJ erred in finding that she had only moderate limitations in concentration, persistence, or pace. She complains because the RFC and the hypothetical to the vocational expert did not explicitly include this language. In any event, we find no error in the ALJ's assignment of weight to the opinions of the SSA psychologists or in her RFC analysis.

opinions that Shinaberry was capable of performing work at the light exertional level, with occasional postural limitations, but found additional physical limitations to be in order based upon Shinaberry's treatment records. With regard to Shinaberry's subjective statements, however, the ALJ explained that Shinaberry's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and explained the basis for this credibility determination. A.R. 29. We have carefully reviewed the record and the ALJ's findings in this regard, and we are satisfied that the ALJ built "an accurate and logical bridge from the evidence to [her] conclusion" that Shinaberry's testimony was not fully credible. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks omitted).

With regard to Ms. Matthews's report, the ALJ explained why the report was given little weight. In its entirety, Ms. Matthews' report states that Shinaberry "has been under my medical care and it is my medical opinion that she has been unable to lift greater than ten pounds since November 2014." A.R. 425. The ALJ explained that the opinion was given "little weight . . . because it is not supported with an explanation," and because it was "not consistent with treatment records showing no evidence of restrictions regarding lifting." A.R. 32.[4]

---

[4] Although the ALJ also noted that Ms. Matthews was also not an acceptable medical source under the Social Security regulations existing at the time, it is clear that the ALJ nonetheless considered Ms. Matthews' opinion and assigned it little weight due to its brevity and inconsistency with the other medical evidence.

12

We likewise find no merit to Shinaberry's claim that the ALJ should have included a sit-stand option in the RFC. As the district court noted, Shinaberry points to no medical evidence in support of this limitation, and the ALJ did not err in refusing to fully credit Shinaberry's subjective statements regarding her physical limitations.

Finally, we note that Shinaberry has raised a number of additional challenges to the ALJ's factual findings based upon the evidence. For example, Shinaberry argues that the ALJ failed to build an adequate and logical bridge from the medical evidence presented at the hearing to the "light work" determination and that, despite her burden of proof, the ALJ should have ordered a consultative evaluation or sent interrogatories to an orthopedic surgeon before issuing a final decision. Although it is not clear to us that these issues were squarely presented to the district court, we have considered all of the issues raised in Shinaberry's opening brief de novo, including those not discussed in this opinion, and find them to be without merit. The ALJ employed proper legal standards and her factual findings are supported by substantial evidence in the administrative record.[5]

III.

For the foregoing reasons, we find that substantial evidence supports the agency decision, and we affirm the judgment of the district court.

---

[5] Shinaberry's argument that the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (the "DOT"), however, was not raised in the district court, nor was it raised in this court until she filed her reply brief. Accordingly, Shinaberry has waived review of this claim. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) ("[A]n issue first argued in a reply brief "is not properly before a court of appeals."); *see also Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.").

*AFFIRMED*