**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1273**

───────────────

GINA S. OWENS,

        Plaintiff - Appellee,

    v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

        Defendant - Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:20-cv-00596-RGD-DEM)

───────────────

Submitted:  January 18, 2023                 Decided:  March 3, 2023

───────────────

Before KING and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ON BRIEF:** Clifford M. Farrell, MANRING & FARRELL, Columbia, Ohio, for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Lauren A. Wetzler, Chief, Civil Division, Alexandria, Virginia, Virginia Van Valkenburg, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Gina Owens applied for social security disability benefits, claiming that she has been unable to work since September 14, 2018, due to a combination of physical and mental impairments. The Social Security Administration denied her claim. At Owens' request, a hearing was held before an administrative law judge (ALJ). The ALJ denied benefits and the district court upheld the decision. We affirm.

I.

The Social Security Administration uses a five-step sequential process to evaluate disability claims. Steps one through three ask: (1) "whether the claimant has been working"; (2) if not, "whether the claimant's medical impairments meet the regulations' severity and duration requirements"; and (3) if so, "whether the medical impairments meet or equal an impairment listed in the regulations." *Shinaberry v. Saul*, 952 F.3d 113, 118-19 (4th Cir. 2020) (cleaned up). "If the claimant prevails at steps one through three, she is disabled." *Id.* at 119. "If the claimant fails at step three, the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can still do despite her physical and mental limitations that affect her ability to work." *Id.* (cleaned up). After determining the RFC, "the ALJ proceeds to step four and determines whether the claimant has proven that she is unable to perform past work." *Id.* If she prevails on this question, "the ALJ proceeds to step five, where the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (cleaned up).

2

Here, the ALJ's findings regarding the first three sequential steps are not in dispute. The ALJ found that Owens was not working and that she has the following severe impairments: diabetes mellitus; migraines; major depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder. Because Owens did not have a physical or mental listed impairment or its equivalent that would qualify her for benefits at step three, the ALJ proceeded to the RFC analysis.

The ALJ discussed at length Owens' testimony and the medical and psychological evidence submitted in support of her claim. To summarize, Owens has a college education, and, prior to her alleged onset of disability of September 14, 2018, she enjoyed a long career as a communications director, telecommunications engineer, and vice-president of technology at a bank. She was ordained as a minister in 2011, and she was appointed as an associate minister of her church in 2016. During her period of alleged disability, Owens completed her graduate studies, obtaining a Master of Theology in 2019, with a GPA of 3.8. She actively worked as an associate minister in a volunteer capacity during this time as well. She delivered sermons at a rate of five to six per year even before she graduated, some of which involved travel to other churches. She has served as a worship leader in her position, led bible studies weekly, led a prayer line, and drafted sermons. Although Owens did not receive compensation for this work, the ALJ reasonably considered Owens' "work activity as an associate minister [to be] demonstrative of her functionality despite her alleged impairments in determining her residual functional capacity." A.R. 18. The ALJ also considered evidence of Owens' personal activities. Owens lives with her husband and daughter. She bathes and grooms herself, takes her medications, and prepares simple

3

meals. She drives her car, shops in stores, and visits with her four grandchildren on the weekends. In October 2019, she took a cruise vacation with her spouse and, in November 2019, signed up for a fitness class to attend three times a week.

The ALJ also discussed the medical and psychological reports from Owens' treating physicians, which the ALJ variously found to be either generally persuasive, partially persuasive, or unpersuasive. These findings are not disputed on appeal. *See* 20 C.F.R. § 404.1520c(a) (For claims filed after March 27, 2017, the ALJ evaluates "the persuasiveness of medical opinions and prior administrative medical findings.").

The ALJ also discussed the opinions of Dr. Andrew Bockner and Dr. David Deaver—the state agency physicians who reviewed Owens' medical records at the initial and reconsideration stages, respectively. Dr. Bockner opined that Owens has a mild limitation in understanding, remembering, or applying information; a mild limitation interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. He opined that Owens would be able to maintain concentration and attention for two-hour periods in order to complete an eight-hour day, would be able to maintain attendance and punctuality with only one-to-two problems per month, and could perform semi-skilled work with her limitations. Dr. Deaver concluded that Owens has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. He opined that Owens would be able to have

4

at least superficial contact with coworkers, and perform work involving simple routine tasks, with the ability to follow at least one-to-two instructions.

The ALJ found the opinions of Drs. Bockner and Deaver to be only "somewhat persuasive." A.R. 27-28. The ALJ found that Owens has a moderate limitation (as opposed to a mild limitation) in interacting with others, and that Owens has only a mild limitation (as opposed to a moderate limitation) in adapting and managing herself.

Based upon the entirety of the testimony, medical opinions and administrative medical findings, the ALJ's assessment of Owens' RFC was as follows:

> After careful consideration of the entire record, I find that [Owens] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to occasionally lift twenty pounds, frequently lift and/ carry ten pounds; she can stand and/or walk for a total of about six hours in an eight-hour workday; she can sit for about six hour[s] in an eight-hour workday; she can engage in frequent postural maneuvers; she can understand, carry out, and remember simple and some complex instructions in two-hour increments sufficiently enough to complete an eight-hour work day in an environment that does not require quota-based work and only occasional interaction with coworkers, the general public, and supervisors; she must work in an environment where the work is stable with occasional changes in the work setting; she would need to avoid environments with bright or flickering light, exposure to unprotected heights, or hazardous moving machinery; and no more than moderate noise as defined in the SCO.

A.R. 21. In further support of her findings, the ALJ found as follows:

> In sum, the claimant's assertions of disability are inconsistent with the record as a whole. While the medical and other evidence show that the claimant experiences some limitations as a result of the combined effect of her medically determinable impairments, the evidence demonstrates, the claimant retains the ability to perform work that is consistent with the above-referenced residual functional capacity. The above-defined residual functional capacity reasonably accommodates the significant limitations imposed by the claimant's combination of impairments.

A.R. 29.

5

Based upon the RFC assessment, the ALJ found, at step four, that Owens was unable to perform her past relevant work, shifting the burden to the Commissioner to prove that Owens could "perform other work that exists in significant numbers in the national economy, considering [her] RFC, age, education, and work experience." *Shinaberry*, 952 F.3d at 119. At step five, the ALJ found, based in part on the additional testimony offered by a vocational expert, that jobs exist in significant numbers in the national economy which Owens can perform. Consequently, the ALJ determined that Owens did not have a qualifying disability during the relevant period.

## II.

On appeal, we "will not disturb an ALJ's decision on an application for [disability benefits] when the ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (cleaned up). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (cleaned up). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (cleaned up).

Owens' appeal is limited to her challenge to the ALJ's assessment of her RFC. More specifically, Owens complains that the ALJ failed to include, as additional limitations in

6

the RFC assessment, Dr. Bockner's opinion that Owens would experience problems with attendance and punctuality one-to-two times per month; Dr. Deaver's opinion that Owens would be limited to a position involving simple repetitive tasks; and Dr. Deaver's opinion that Owens could at least superficially interact with coworkers, as opposed to the occasional interaction the ALJ determined she was capable of in the RFC. Owens asserts that the ALJ failed to adequately explain why these additional limitations were not included in the RFC, rendering it impossible for us to conduct a meaningful review of her decision. We disagree.

In assessing a claimant's RFC, an ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Shinaberry*, 952 F.3d at 119. "[T]he ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe." *Id.* The ALJ must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (cleaned up). "In other words, the ALJ must both identify evidence that supports [her] conclusion and build an accurate and logical bridge from that evidence to [her] conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (cleaned up); *see also Thomas*, 916 F.3d at 311 ("[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). However, failure to strictly comply with these requirements does not automatically necessitate remand. *See Mascio*, 780 F.3d at

7

636. Nor is there any categorical rule that requires an ALJ to specifically reject every limitation contained in a report the ALJ has discussed and found to be only partially or somewhat persuasive, so long as the reviewing court can ascertain the basis for the ALJ's findings. The driving consideration is whether the ALJ's analysis allows for meaningful judicial review. *See id.* (explaining that remand is required only "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (cleaned up).

Here, the ALJ explained the underlying basis for the RFC assessment at length, including the rationale behind her determination that Owens' assertions of disability were inconsistent with the record as a whole and, most notably, Owens' own testimony regarding her activities and abilities; and the ALJ's decision is more than sufficient for us to conduct a meaningful judicial review. We have no trouble concluding that the ALJ, in her comprehensive decision, applied the correct legal standards in evaluating Owens' claim for benefits, appropriately identified the testimony and medical evidence supporting her findings and conclusions, including the limitations that she chose to adopt from the reports of the state agency physicians, and drew logical connections between this evidence and her assessment of Owens' RFC.

## III.

For the foregoing reasons, we find that substantial evidence supports the agency's decision, and we affirm the decision of the district court. We dispense with oral argument

8

because the facts and legal contentions are adequately presented in the materials before this

court and argument would not aid the decisional process.

*AFFIRMED*