**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1381**

---

BRIAN PEPPER,

       Plaintiff - Appellant,

   v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

       Defendant - Appellee.

---

Appeal from the United States District Court for the District of South Carolina, at Greenville. Cameron McGowan Currie, Senior District Judge. (6:20-cv-04159-CMC)

---

Argued: March 10, 2023                    Decided: April 25, 2023

---

Before WILKINSON, HARRIS, and RUSHING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** George C. Piemonte, MARTIN, JONES & PIEMONTE, Charlotte, North Carolina, for Appellant. William Feldman, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:** Michel Phillips, MARTIN, JONES & PIEMONTE, Charlotte, North Carolina, for Appellant. Brian C. O'Donnell, Regional Chief Counsel, Katie M. Gaughan, Supervisory Attorney, Office of the General Counsel, M. Jared Littman, Special Assistant United States Attorney, SOCIAL SECURITY ADMINSTRATION, Philadelphia, Pennsylvania; Corey F. Ellis, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from Brian Pepper's application for supplemental security income benefits under the Social Security Act. *See* 42 U.S.C. §§ 1381–1383f. According to Pepper, he became unable to work in 2017, at the age of 27, due primarily to his Crohn's disease, depression, and anxiety. Following a hearing, an ALJ disagreed, and after exhausting his administrative appeals, Pepper took his case to federal district court. The district court affirmed the denial of benefits, and for the reasons given below, we now affirm the judgment of the district court.

We review the ALJ's disability determination pursuant to 42 U.S.C. § 405(g) and must uphold that determination if the ALJ "applied correct legal standards" and if the "factual findings are supported by substantial evidence." *Dowling v. Comm'r. of Soc. Sec. Admin.*, 986 F.3d 377, 382–83 (4th Cir. 2021) (internal quotation marks omitted). Our review for substantial evidence does not permit us to "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (cleaned up). Instead, if there is conflicting evidence as to disability, "we defer to the ALJ's decision." *Id.*

At issue in this case is the ALJ's assessment of Pepper's "residual functional capacity," or "RFC" – "the most [the] claimant can still do despite all of [his] medically determinable impairments." *Woods v. Berryhill*, 888 F.3d 686, 689 (4th Cir. 2018) (internal quotation marks omitted). The RFC is a key part of the five-step process by which an ALJ determines disability. Only if the ALJ finds that the claimant, in light of his RFC,

3

cannot perform jobs available in the national economy will the claimant qualify for disability benefits. *See id.* [1]

Here, the ALJ found that Pepper had four medically determinable impairments severe enough to limit his job performance: anxiety disorder; depression; obesity; and Crohn's disease, a chronic inflammatory bowel condition. *See Pledger v. Lynch*, 5 F.4th 511, 514 (4th Cir. 2021) (describing Crohn's disease). As for obesity and Crohn's disease, the ALJ determined, Pepper's physical examinations remained largely normal and "demonstrated that he retained a high degree of functioning physically." A.R. 21. Pepper's Crohn's disease was well-controlled by medication; his gastroenterology records showed "only normal findings," and his symptoms – primarily diarrhea – were relatively mild. A.R. 24. Pepper's depression and anxiety also responded to medication, the ALJ found, and his mental status examinations had yielded "grossly normal" results indicating a "high degree of functioning mentally." A.R. 22. Indeed, the ALJ noted, Pepper's treating physician, Dr. Suresh Khandekar, opined that "getting a job will help [Pepper] psychologically." A.R. 24.

---

[1] The full five-step process, established by Social Security Administration regulation and applied by the ALJ here, is as follows: "[T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The RFC assessment is undertaken after step three and before an ALJ considers steps four and five. *See Mascio*, 780 F.3d at 635.

Based on this analysis, the ALJ found that Pepper had the residual functional capacity to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb, balance, stoop, kneel, crouch, and crawl. He can have frequent exposure to workplace hazards. He is limited to simple, routine tasks performed two-hours at a time, but no fast-paced production rate work. He can have occasional interaction with the public and coworkers. He will be off task less than 10% of the workday in addition to regularly scheduled breaks.

A.R. 19. The ALJ then concluded – here relying on the testimony of a vocational expert – that despite these limitations, a significant number of jobs would be available to Pepper in the national economy. Accordingly, the ALJ found Pepper not disabled and denied his application for benefits.

On appeal, Pepper argues primarily that the ALJ improperly rejected the opinion of his treating physician, Dr. Khandekar, as to the extent of his Crohn's disease-related limitations. But the record is to the contrary: The ALJ found "Khandekar's opinion [] persuasive," A.R. 24, and incorporated limitations substantially aligned with that opinion into Pepper's RFC. Pepper focuses on his need for unscheduled bathroom breaks to manage his diarrhea, and on Khandekar's view that he "may need" such breaks "2–3 times at the most" during an eight-hour workday, for an average of "15 min[utes]" each. A.R. 720. But as the ALJ explained, the RFC accounts for such a requirement, allowing for a "time off task limitation" of up to 10 percent of an eight-hour workday (or roughly 48 minutes) for "pain and bathroom breaks." A.R. 24. It was only "*greater* limitations" – that is, bathroom-related accommodations going *beyond* those identified by Dr. Khandekar – that the ALJ viewed as "inconsistent with longitudinal evidence and findings." *Id.*

5

(emphasis added). In short, the factual premise of Pepper's claim – that the ALJ refused to credit Dr. Khandekar's opinion as to bathroom breaks – is simply mistaken.

Nor are we persuaded by Pepper's related claim that the ALJ failed to properly evaluate the opinion of Dr. Khandekar under revised agency regulations. As the district court explained, the ALJ applied the correct legal standard to the medical opinion of Pepper's treating physician, giving it no special deference or specific evidentiary weight and instead focusing on its supportability and its consistency with other record evidence. *See* 20 C.F.R. § 416.920c. Like the district court, we find that the ALJ's assessment under this standard is supported by substantial evidence, giving us no basis for disturbing it.

Finally, Pepper takes issue with the ALJ's determination that he remains able to work despite his mental impairments. There is no dispute that Pepper's impairments are serious: As the ALJ recognized, Pepper has been diagnosed with severe depression and has reported past suicide attempts. But the ALJ carefully considered Pepper's entire medical record, including his responsiveness to medication, multiple expert reports finding that he maintains a high degree of mental functioning and the capacity to work, and his own treating physician's assessment that working will "help him psychologically." A.R. 721. The ALJ also incorporated into Pepper's RFC significant limitations addressing his mental condition, restricting him to simple and routine tasks performed without time pressure and to only occasional interaction with the public and coworkers.[2] Although

---

[2] For the first time on appeal, Pepper takes issue with one of those limitations, arguing that the prohibition on "fast-paced production rate work," A.R. 19, is too vague. We generally will not consider an argument that was not preserved in the district court. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014). And while we may depart from

6

Pepper would have us weigh the evidence differently, it is not our job to second-guess the ALJ's considered decision. *See Shinaberry*, 952 F.3d at 123. Because substantial evidence supports the ALJ's determination that Pepper's impairments do not warrant a still more limited RFC, we defer to the ALJ. *Id.*

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

that rule in "exceptional circumstances" to correct a manifest and fundamental error, *see id.*, this is not such a case: While we have required additional explanation for some restrictions aimed at similar concerns, *see, e.g.*, *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (remanding for elaboration on prohibition of "production rate or demand pace" work), we note that this one is clearer – specifying that the target is "*fast-paced*" work – and that the ALJ further elaborated at the hearing, explaining to the vocational expert that what was precluded was "fast assembly line work," A.R. 51. Under these circumstances, applying our usual forfeiture bar works no injustice. *See In re Under Seal*, 749 F.3d at 285.