**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-2150**

_____

WILLIAM KINLAW,

  Plaintiff - Appellant,

  v.

FRANK BISIGNANO, Commissioner of Social Security,

  Defendant – Appellee.

_____

Appeal from the United States District Court for the District of South Carolina at Orangeburg. Timothy M. Cain, Chief District Judge. (5:23-cv-02529-KDW)

_____

Submitted:  August 14, 2025                    Decided:  September 24, 2025

_____

Before AGEE and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Robertson H. Wendt, Jr., ROBERTSON H. WENDT, PA, Charleston, South Carolina; Sarah H. Bohr, BOHR & HARRINGTON, LLC, Atlantic Beach, Florida, for Appellant.  Brian C. O'Donnell, Associate General Counsel, Jean M. Godfrey, Senior Attorney, Maija DiDomenico, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, Bryan P. Stirling, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff William Kinlaw appeals the district court's order upholding the administrative law judge's (ALJ) denial of Kinlaw's application for social security disability benefits. We affirm.

I.

A.

"The Social Security Act provides benefits to qualifying individuals who have a disability, as defined by the Social Security Act." *Ard v. O'Malley*, 110 F.4th 613, 615 (4th Cir. 2024). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a person is disabled, the Social Security Administration undertakes a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The first step considers the claimant's work activity. If the claimant is "doing substantial gainful activity" as defined in the regulations, the claimant is not disabled. *Id*. § 404.1520(a)(4)(i).

At steps two and three, the ALJ considers "whether the claimant's medical impairments meet the regulations' severity and duration requirements"; and, if so, "whether the medical impairments meet or equal an impairment listed in the regulations." *Shinaberry v. Saul*, 952 F.3d 113, 118-19 (4th Cir. 2020) (cleaned up). "If the claimant prevails at steps one through three, [he] is disabled." *Id.* at 119. If not, "the ALJ must

2

determine the claimant's residual functional capacity (RFC), which is the most the claimant can still do despite physical and mental limitations that affect [his] ability to work." *Id.* (cleaned up).

After determining the RFC, "the ALJ proceeds to step four and determines whether the claimant has proven that [he] is unable to perform past work." *Id.* If the claimant proves that he cannot perform his past work, "the ALJ proceeds to step five, where the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (cleaned up).

## B.

Kinlaw filed his application for disability benefits on April 16, 2013, when he was 59 years old. He alleged a disability onset date of January 1, 2012, due to headaches, back pain, and neck pain. Just prior to filing his application, Kinlaw had been working as an unarmed security guard for the Medical University of South Carolina (MUSC) for approximately 10 years. He lost his job on April 3, 2013, because he fell asleep on the job. However, MUSC allowed him to resign so that he could obtain retirement benefits and maintain his insurance coverage. Kinlaw is also an ordained minister and he has been working for many years as a part-time associate minister for Morris Brown AME Church. He has continued performing his duties as associate minister throughout these proceedings. Just prior to his first administrative hearing, Kinlaw amended his disability onset date to April 3, 2013—the date he left employment as a security guard.

3

Kinlaw's claim has since been the subject of four administrative hearings before three ALJs. The claim was denied each time but, pursuant to unopposed motions, the district court remanded to the agency for further consideration. On the final remand, the Appeals Council ordered the claim to proceed before a new ALJ.

The fourth and final hearing was held on February 9, 2023, before ALJ Carl Watson. In addition to obtaining testimony from Kinlaw and a vocational expert, the ALJ exhaustively considered all of the medical treatment evidence, as well as the opinion medical evidence from state agency physicians Cleve Hutson, M.D., and Mary Lang, M.D., and from Kinlaw's treating physician, Eric Matheson, M.D.

Dr. Hutson prepared the initial consultative examination for the agency. It was his opinion that Kinlaw was able to perform light exertional activity with some postural and manipulative limitations, and that he had the residual functional capacity to return to his past relevant work as a security guard. At the reconsideration level, Dr. Lang adopted Dr. Hutson's findings with additional limitations in his ability to reach overhead. She also concurred in Dr. Hutson's opinion that Kinlaw could return to his work as a security guard. Both physicians were of the view that the medical evidence did not support Kinlaw's subjective complaints.

Dr. Matheson disagreed. He advised that Kinlaw had "struggled with chronic neck and low back pain for many years." J.A. 756. With regard to his prior work, Dr. Matheson stated that Kinlaw had "previously worked in security, but due to his back pain he was unable to continue working as he was not able to restrain dangerous individuals secondary to his pain." J.A. 756. Dr. Matheson opined that Kinlaw was limited to standing and/or

4

walking less than two hours in an eight-hour workday, to sitting for about six hours in an eight-hour workday, that he could never bend at the waist, and that he required the use of a cane for walking on rough/uneven terrain and bending and stooping.

On April 3, 2023, ALJ Watson issued a comprehensive decision denying benefits. At step one of the sequential analysis, the ALJ found that Kinlaw "engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2012 through his date last insured of September 30, 2019." J.A. 1627. Specifically, the ALJ found that Kinlaw "earned above substantial gainful activity levels in 2013 while working [as a security guard at MUSC] and 2019 while working as a pastor's assistant at Morris Brown AME Church." *Id.* However, the ALJ opted not to deny benefits on this basis and, instead, continued the sequential analysis.[1]

At steps two and three, the ALJ found that Kinlaw "had the following severe impairments: degenerative disc disease of the cervical spine, thoracic spine, and lumbar spine, degenerative joint disease of the left knee and left shoulder, and carpal tunnel syndrome." J.A. 1628. However, Kinlaw "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments."

---

[1] The ALJ twice stated that Kinlaw had engaged in substantial gainful activity in 2013 and 2019, and explained why. But, as Kinlaw correctly points out, he also included a single, inconsistent statement that Kinlaw's work activity did *not* rise to the level of substantial gainful activity. Considering the decision as a whole, we think it clear that this single misstatement at step one was a scrivener's error. At step four of the analysis, the ALJ again made clear his finding that claimant's work activity qualified because it was "performed at substantial gainful activity levels." J.A. 1638. In any event, we agree with the district court that this discrepancy at step one was harmless error because the ALJ did not end the analysis and deny benefits on this basis.

J.A. 1630-31.  Among other things, the ALJ noted that Kinlaw "was able to perform personal care activities, such as dressing, bathing, caring for hair, shaving, feeding himself, and using the restroom independently."  J.A. 1630.  He was also able to drive, prepare his own meals, perform limited cleaning and laundry, and shop in stores.  He had cared for his terminally ill sister, who lived with him from September 2013 through at least May 2014.  And, significantly, he "was able to work at gainful levels as a Pastor's Assistant indicating an ability to adapt and manage himself."  J.A. 1630.

Addressing Kinlaw's RFC, the ALJ credited the opinions of Drs. Hutson and Lang as to his ability to engage in light work with some limitations over that of Dr. Matheson, who opined that Kinlaw was essentially limited to sedentary work, and found as follows:

> [Kinlaw] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could not climb ladders, ropes, or scaffolds.  He could occasionally climb ramps and stairs.  He could occasionally stoop, kneel, crouch, and crawl.  He could perform frequent but not constant overhead reaching bilaterally.  He could perform frequent but not constant fine and gross manipulation bilaterally.

J.A. 1632.  In doing so, the ALJ noted that, although Kinlaw's impairments could cause his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence."  J.A. 1633.  The ALJ found that Kinlaw's "ability to continue to care for his personal needs as well as care for his sister reflects daily activities [that were], at least at times, inconsistent with his allegations of disabling severity."  J.A. 1636.  His substantial gainful employment as a pastoral assistant also "indicate[d] that [his] daily activities have, at least at times, been somewhat greater than [he] has generally reported."  *Id.*

6

At step four, the ALJ found the vocational expert's testimony credible and uncontested, and found that Kinlaw was capable of "performing [his] past relevant work as a Security Guard and a Pastoral Assistant as actually and generally performed." J.A. 1639. Accordingly, the claim was denied on this basis. The Appeals Council denied review, the ALJ's decision became the final decision of the agency, and the district court affirmed. This appeal followed.

## II.

Our review of the decision of an ALJ is quite limited. "[W]e will not disturb an ALJ's decision on an application for [disability benefits] when the ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (cleaned up). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (cleaned up). When we review for "substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (cleaned up).

## III.

On appeal, Kinlaw argues that the ALJ erred in finding that he could return to his past relevant work as a pastoral assistant and security guard and also erred in his consideration of the opinion medical evidence. We will address each argument in turn.

7

A.

A claimant's past work qualifies as past relevant work under the regulations if "it was done within the last 15 years, lasted long enough for [him] to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) (2012).[2] The claimant retains the ability to perform his past relevant work if he retains the capacity to perform the job "either as [he] actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

"Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities," "even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* § 404.1572(a). "Gainful work activity is work activity" that is done "for pay or profit," "whether or not a profit is realized." *Id.* § 404.1572(b).

1.

Kinlaw first claims that the ALJ erred in finding that he can return to his past relevant work as a pastoral assistant because his employment as an associate minister did not qualify as "substantial work activity" under the regulations. We disagree.

Generally, when evaluating a claimant's substantial gainful activity, the "primary consideration will be the earnings [the claimant] derive[s] from the work activity." 20

---

[2] The rules have since been revised to change the 15-year timeframe to five years. 20 C.F.R. § 404.1565(a) (2024).

8

C.F.R. § 404.1574(a)(1). Earnings from work activities that exceed those set out in the applicable earnings guidelines table "will ordinarily show that [the claimant has] engaged in substantial gainful activity," 20 C.F.R. § 404.1574(b)(2), and give rise to a rebuttable "presumption of substantial gainful activity." *Payne v. Sullivan*, 946 F.2d 1081, 1083 (4th Cir. 1991).

Relevant here, the presumption can be rebutted if the claimant can prove that his earnings "exceed the reasonable value of the work [he] perform[ed]." 20 C.F.R. § 404.1574(a)(2). If so, the agency will consider the excess to be a subsidy and subtract it from the claimant's gross earnings. *See id.* § 404.1574(b)(1). Work is considered to be "subsidized if the true value of [the] work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to [the claimant] for [the] work." *Id.* § 404.1574(a)(2). "For example, when a person with a serious impairment does simple tasks under close and continuous supervision, [the] determination of whether that person has done substantial gainful activity will not be based only on the amount of the wages paid." *Id.*

Kinlaw worked as an associate minister with Morris Brown AME Church for many years prior to filing his disability application and continued to do so after he lost his job as a security guard. He typically worked 14 to 15 hours per week, although his hours varied depending on the needs of the church. His duties included participating in weekly church services, reading scripture, prayer, and preaching. It also included hospital visitations, responding to deaths in a congregant's family, and otherwise ministering to the needs of the congregation. In 2001, he was paid $4,000. His pay increased incrementally to $6,180

9

by 2008. It increased again in 2018 to $8,758.76. In December 2018, Kinlaw turned 65 years old and his pay was significantly increased. He was paid $25,680 in 2019, $26,111.49 in 2020, and $26,265.46 in 2021. It is undisputed that Kinlaw's pay in 2019 significantly exceeded the regulatory threshold of $14,640. It is also undisputed that, although beyond his date last insured, Kinlaw's pay in 2020 and 2021 also exceeded the table thresholds ($15,120 in 2020; and $15,720 in 2021). Therefore, Kinlaw was presumed to have engaged in substantial gainful activity in 2019.

Kinlaw sought to rebut the presumption. He argued that the increase in his pay in 2019 and beyond was charitable in nature. He testified that his responsibilities did not significantly increase after 2018, but he did acknowledge that he took on new and additional duties, including opening the church for meetings and rehearsals and locking up the church afterwards. He testified that he did what he was required to do to earn his pay.

The ALJ rejected Kinlaw's subsidy claim as unsupported by the evidence. In addition to questioning the credibility of Kinlaw's testimony on this point, the ALJ considered a statement from Dr. James A. Keeton, Jr., the Senior Pastor at Morris Brown AME Church. Dr. Keeton stated that "[o]ther associate ministers are generally paid less than $14,000 per year"—an amount just under the 2019 threshold—but also advised that "Reverend Kinlaw has been a part of the ministerial staff for a longer time with increased responsibilities." J.A. 1917. Dr. Keeton also acknowledged Kinlaw's medical impairment, which he believed limits Kinlaw's "ability to perform significantly more church duties," and the fact that the pay increase helped Kinlaw financially. *Id.* But he did not affirm Kinlaw's claim that the increase in pay was a subsidy or that it was otherwise charitable in

10

nature. He did not indicate that Kinlaw needed special accommodations, assistance, or supervision to do his job. Nor did he offer an opinion that Kinlaw was not fully earning his pay or that his pay exceeded the value of his work. In sum, Dr. Keeton's statement corroborated Kinlaw's testimony that he was performing additional duties, and it fell short of corroborating Kinlaw's claim that the salary increase in 2019 was a subsidy.

We think the evidence sufficient for a reasonable mind to accept the ALJ's finding that Kinlaw engaged in substantial gainful activity in 2019 as a pastoral assistant, and that Kinlaw failed to rebut the presumption that he was so engaged. As noted above, we do not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock*, 667 F.3d at 472 (cleaned up). Here, the ALJ did not credit Kinlaw's testimony on this point and reasonably interpreted Dr. Keeton's letter as insufficient to rebut the presumption that Kinlaw engaged in substantial gainful activity in 2019. Accordingly, we affirm the ALJ's decision that Kinlaw was not disabled because he was capable of, and indeed was continuing to perform, his past relevant work as a pastoral assistant.

2.

We also affirm the ALJ's finding that Kinlaw was not disabled because he was able to return to his past relevant work as an unarmed security guard. As an unarmed security guard for MUSC, Kinlaw testified that he patrolled areas and would be expected to confront unauthorized individuals. But he did not have the authority to make arrests, nor was he required or expected to apprehend or restrain them. On the contrary, he testified that he

11

was expected to call for an armed security guard if such a situation arose. And even that had never occurred. Moreover, the ALJ reasonably found that Kinlaw lost his job on April 3, 2013, just prior to filing his application for disability, not because he could no longer perform his duties, but because he fell asleep on the job.

Accordingly, we hold that the ALJ's finding that Kinlaw was capable of performing the security guard job as actually performed was also supported by substantial evidence, rendering it unnecessary to consider Kinlaw's additional argument that the ALJ erred in finding that he could also perform his past relevant work as generally performed.[3]

## B.

Finally, Kinlaw argues that the ALJ erred in giving greater weight to the opinions of Drs. Hutson and Lang and little weight to the opinion of his treating physician, Dr. Matheson. Again, we find no error.

For claims filed prior to March 27, 2017, an ALJ could give a treating physician's opinion "controlling weight" if it was (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial

---

[3] Kinlaw also complains because the ALJ considered his original disability onset date of January 2, 2012, rather than the amended disability onset date of April 3, 2013. Kinlaw's amendment occurred just prior to his first administrative hearing in 2014, to coincide with the date he lost his job as a security guard. The ALJ's error in proceeding from the original disability onset date, although understandable given the procedural history, is in any event harmless. Because Kinlaw's work as a security guard in 2013 preceded his amended disability date of April 3, 2013, it should not have counted towards the ALJ's step one determination that he also engaged in substantial gainful activity in 2013. But, again, the ALJ did not deny disability benefits on this basis. And Kinlaw's employment as a security guard in early 2013 still qualified as past relevant work for purposes of the step four analysis. *See* 20 C.F.R. § 404.1560(b) (2012).

12

evidence" in the record. 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (cleaned up). "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.*

That is what occurred here. The ALJ exhaustively considered the medical treatment records, particularly those pertaining to claimant's back and neck surgeries and his conservative treatment thereafter, as well as the opinion medical evidence. The ALJ gave "great weight" to Dr. Hutson's and Dr. Lang's view that Kinlaw could perform light exertional activity with some limitations because it was "well supported by the medical evidence of record, including the claimant's treatment history, findings upon examination, and the claimant's activities." J.A. 1637. This included, of course, his ability to perform his activities of daily living, care for his ailing sister, and continue his employment as a pastoral assistant, which was not sedentary in nature.

The ALJ gave "little weight" to Dr. Matheson's opinion that Kinlaw was essentially limited to sedentary work. J.A. 1637. The ALJ explained that Dr. Matheson's opinion lacked sufficient "explanation, rationale, clinical findings, or reference to objective testing," and was unsupported by "his own treatment notes." *Id.* The claimed limitations were based primarily on Kinlaw's subjective complaints which were inconsistent with the record evidence, including medical evidence that he had "normal gait and station, and full strength despite his limitations of range of motion." *Id.* In addition, Kinlaw's activities of

13

daily living, including his ability to work at gainful levels, indicated that he was less limited than he claimed.

The ALJ also gave "little weight" to Dr. Matheson's statement that Kinlaw was unable to continue working as a security guard because he was not able to restrain dangerous individuals. J.A. 1636. This assessment was "completely inconsistent with [Kinlaw's] report that he was allowed to resign from this job so that he could keep benefits instead of being terminated by his employer for falling asleep on the job." *Id.* It was also "not particularly relevant" given that Kinlaw testified that his "job did not involve restraining individuals." *Id.*

Having independently reviewed the evidence, we hold that the ALJ was well within his discretion to decline to give Dr. Matheson's opinion controlling weight and to, instead, give greater weight to the opinions of Drs. Hutson and Lang, which were supported by the other record evidence.

### III.

For the foregoing reasons, we affirm the agency's decision to deny benefits. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

14