**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2088**

BONNILYN A. MASCIO,

       Plaintiff – Appellant,

    v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant – Appellee,

    and

MICHAEL J. ASTRUE, Commissioner of Social Security,

       Defendant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Louise W. Flanagan, District Judge. (2:11-cv-00065-FL)

Argued: December 11, 2014      Decided: March 18, 2015

Before AGEE, DIAZ, and FLOYD, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge Diaz wrote the opinion, in which Judge Agee and Judge Floyd joined.

**ARGUED:** David J. Cortes, ROBERTI, WITTENBERG, LAUFFER, WICKER & CINSKI, P.A., Durham, North Carolina, for Appellant. Mark J. Goldenberg, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas G. Walker, United States

Attorney, R.A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Bonnilyn Mascio appeals the Social Security Administration's denial of her application for supplemental security income benefits. Because we conclude that the administrative law judge erred by not conducting a function-by-function analysis, by ignoring (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace, and by determining Mascio's residual functional capacity before assessing her credibility, we reverse and remand.

I.

A.

Mascio alleges that she is disabled from severe degenerative disc disease, carpal tunnel syndrome, and adjustment disorder.[1] In 2008, an administrative law judge ("ALJ") found that Mascio was not disabled, but the district

---

[1] An "adjustment disorder" is "a disorder the essential feature of which is a maladaptive reaction to an identifiable psychological stress, or stressors, that occurs within weeks of the onset of the stressors and persists for as long as 6 months; the maladaptive nature of the reaction is indicated by impairment in occupational (including school) functioning, or in usual social activities or relationships with others, or with symptoms that are in excess of a normal or expectable reaction to the stressor." Stedman's Medical Dictionary 259610 (28th ed. 2006).

court reversed and the case was remanded to a second ALJ for another hearing and disability determination. The second ALJ found that Mascio was not disabled from March 15, 2005, to November 30, 2009.[2] Mascio lost her administrative appeal and filed a complaint in the district court, which granted the Commissioner's motion for judgment on the pleadings and upheld the denial of benefits. This appeal followed.

B.

We review de novo a district court's decision on a motion for judgment on the pleadings. Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 104 (4th Cir. 2006). We will affirm the Social Security Administration's disability determination "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Mascio does not dispute the ALJ's factual findings but argues that the ALJ made four legal errors by (1) not conducting a function-by-function analysis; (2) not including Mascio's concentration, persistence, or pace limitation in his hypothetical to the vocational expert; (3) determining Mascio's residual functional capacity before assessing her credibility; and (4) not applying

_____

[2] While her first appeal was pending, the Social Security Administration approved Mascio's application for benefits from an onset date of December 1, 2009.

4

the so-called "great weight rule" to Mascio's subjective claims of pain.

Before turning to Mascio's arguments, we provide an overview of the five-step sequential evaluation that ALJs use to make disability determinations.

C.

The Social Security Administration regulations describe the five-step process in detail. See 20 C.F.R. § 416.920(a)(4) (2014). To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed

5

impairment or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity, which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1). To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. Id. § 416.945(a)(2).

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her residual functional capacity, the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's residual functional capacity, age, education, and work experience. Id. §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429. The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her

6

burden, the ALJ finds the claimant not disabled and denies the application for benefits.

In this case, at step one, the ALJ determined that Mascio had not been working. At step two, he found that Mascio had four severe impairments--degenerative disc disease, carpal tunnel syndrome, adjustment disorder, and a history of substance abuse--that, alone or together, met the regulations' duration requirement. At step three, he decided that Mascio's impairments did not meet or equal any of the impairments listed in the regulations.

The ALJ then found that Mascio had the residual functional capacity to perform "light work,"[3] except that she was further limited to "chang[ing] between sitting and standing every 30 minutes ('sit/stand option'); only occasional climbing, balancing, bending, stooping, crouching or crawling; no more than frequent fingering; no exposure to hazards such as

_____

[3] The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

7

unprotected heights or dangerous machinery; and, due to her adjustment disorder, only unskilled work." A.R. 492. At step four, he concluded that Mascio could not perform her past work based on her residual functional capacity. Finally, at step five, he found that Mascio could perform other work and therefore was not disabled.

## II.

With this background in mind, we turn to Mascio's contentions of error.

### A.

Mascio first argues that the ALJ erred in assessing her residual functional capacity because he did not conduct a function-by-function analysis. We agree that, on the facts of this case, the ALJ's failure to perform this analysis requires remand.

Mascio's argument rests on Social Security Ruling 96-8p,[4] which explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess

_____

[4] The Ruling's title is "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims."

8

his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[5] SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at 34,478.

Mascio contends that the ALJ did not follow these procedures. The Commissioner responds that Mascio's argument is "moot" because the ALJ found at step four that Mascio could not perform her past work. We, however, find the Commissioner's argument unconvincing because ALJs clearly use the residual

---

[5] The listed functions are the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945(b)-(d).

9

functional capacity finding at steps four and five. See id. at 34,475-76; see also id. at 34,476 ("At step 5 of the sequential evaluation process, . . . [w]ithout a careful consideration of an individual's functional capacities to support [a residual functional capacity] assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." (emphasis added)).

Alternatively, the Commissioner urges us to join other circuits that have rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. See, e.g., Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (citing cases from the Sixth, Seventh, Eighth, and Ninth Circuits). We agree that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are "irrelevant or uncontested." Id. But declining to adopt a per se rule does not end our inquiry. In that regard, we agree with the Second Circuit that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or

where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. We find this to be such a case.

Here, the ALJ has determined what functions he believes Mascio can perform, but his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions. In particular, although the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday. The missing analysis is especially troubling because the record contains conflicting evidence as to Mascio's residual functional capacity--evidence that the ALJ did not address.

For example, the administrative record includes two residual functional capacity assessments (Exhibits 12F and 20F) by state agency disability examiners. These assessments conflict with each other. Exhibit 12F states that Mascio can lift 50 pounds, but Exhibit 20F limits her to 20 pounds. Yet the ALJ's findings are more consistent with Exhibit 20F, about which he said nothing. To make matters worse, the ALJ's discussion of Exhibit 12F trails off right where he was poised to announce the weight he intended to give it:

11

In according with the guidelines in Social Security Ruling 96-6p, the undersigned has carefully considered the residual functional capacity assessments completed by the State Agency and the findings of fact made by the State Agency and other program physicians regarding the nature and severity of the claimant's impairments. These assessments have been considered as expert medical opinions of non-examining sources. The State Agency physicians assessed the claimant as having no significant medical problems that would cause her to be unable to perform work at the medium exertional level with postural limitations of only occasional climbing of ladders or ropes and only occasional bending, as well as an avoidance of concentrated exposure to hazards such as dangerous machinery or heights (Exhibit 12F). Because this opinion is based on much of the objective medical evidence of record and takes into account the claimant's subjective complaints, the undersigned gives this assessment

In sum, the above residual functional capacity assessment is supported by the treatment notes, test results, and other objective medical evidence of record as well as the opinions of the State Agency consultant.

A.R. 496 (emphasis added).

Because we are left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary.

B.

Mascio next argues that the ALJ presented a legally insufficient hypothetical to the vocational expert.[6] The ALJ asked the expert if jobs existed for a hypothetical person with Mascio's age, education, and work experience, where the claimant is "limited to light work but [can] sit or stand at will about every 30 minutes, and [can] do only occasional postural activities such as balancing, stooping, kneeling, crouching,

_____

[6] We find it appropriate to address Mascio's other alleged errors because they could recur on remand.

12

crawling and climbing; [but cannot be] expos[ed] to hazardous conditions such as heights or moving machinery; and can do . . . frequent fingering." A.R. 586. Notably, the hypothetical said nothing about Mascio's mental limitations.

The vocational expert responded that there were unskilled, light work jobs for that person, including office helper, order caller, and warehouse checker.[7] The ALJ's hypothetical, together with the vocational expert's unsolicited addition of "unskilled work," matched the ALJ's finding regarding Mascio's residual functional capacity. Thus, the hypothetical was incomplete only if the ALJ failed to account for a relevant factor when determining Mascio's residual functional capacity. According to Mascio, that is precisely what happened--the ALJ did not consider her mental limitations despite crediting at step three Mascio's diagnosis of an adjustment disorder and also finding that Mascio had moderate difficulties in maintaining her concentration, persistence, or pace as a side effect of her pain medication.

---

[7] Although the ALJ's hypothetical said nothing about "unskilled work," the expert added that limitation to her response. The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

13

The Commissioner argues that the ALJ properly excluded any limitation for concentration, persistence, or pace because the ALJ (1) disbelieved Mascio's need for pain medication because she had been convicted of selling her prescription pain medication and had lied to her doctor about using marijuana; and (2) disbelieved Mascio's claim that her pain medication caused daytime fatigue because she never sought treatment for this side effect.[8]

As to the first point, the ALJ's analysis does not go as far as the Commissioner's does. The ALJ concluded only that Mascio's conviction and lie "make[] her statements that her pain is as limiting as she has alleged less credible." A.R. 496 (emphasis added). The ALJ did not find that she suffered from no pain or that she never took medication for it.

As to the second point, it is true that the ALJ concluded that Mascio's allegation that her pain caused daytime fatigue was "less credible" because she did not complain about this side effect to her doctors. A.R. 496. But this leaves us to wonder

---

[8] The Commissioner also says that the ALJ properly excluded the limitation for concentration, persistence, or pace because Mascio did not attend five scheduled follow-up appointments with a mental health counselor. But those appointments related to her adjustment disorder, not side effects from pain medication. And, despite Mascio not following up for treatment, the ALJ credited Mascio's adjustment disorder as requiring a limitation to unskilled work.

14

if the ALJ found her claim of fatigue partially or completely incredible, particularly since the ALJ elsewhere concluded that Mascio's pain medication "impacts her thought processes." A.R. 491. We think this inconsistency needs to be explained.

In addition, we agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See id. at 1181. But because the ALJ here gave no explanation, a remand is in order.

C.

Next, Mascio contends that the ALJ erred by determining her residual functional capacity before assessing her credibility. We agree that the ALJ erred, and that the error was not harmless.

Mascio's argument stems from the ALJ's use of the following language in his opinion:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

A.R. 495. We agree with the Seventh Circuit that this boilerplate[9] "gets things backwards" by implying "that ability to work is determined first and is then used to determine the claimant's credibility." Bjornson, 671 F.3d at 645.

The boilerplate also conflicts with the agency's own regulations, which direct the ALJ to "determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be

_____

[9] As the government concedes, this language comes from a template "drafted by the Social Security Administration for insertion into any administrative law judge's opinion to which it pertains." Bjornson v. Astrue, 671 F.3d 640, 644-45 (7th Cir. 2012).

16

accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. § 416.929(a). Thus, the ALJ here should have compared Mascio's alleged functional limitations from pain to the other evidence in the record, not to Mascio's residual functional capacity.

The boilerplate also suggests that the ALJ acted contrary to the agency's rulings. Social Security Ruling 96-8p defines residual functional capacity as "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. at 34,475 (emphasis added). And when explaining that the residual functional capacity "assessment must be based on all of the relevant evidence in the case record," Ruling 96-8p's illustrative list includes "[e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Id. at 34,477 (second emphasis added). Thus, a claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity.

17

The ALJ's error would be harmless if he properly analyzed credibility elsewhere. But here, the ALJ did not. The ALJ gave three reasons for rejecting Mascio's statements as to pain: Mascio (1) had not complied with follow-up mental health treatment; (2) had lied to her doctor about using marijuana; and (3) had been convicted for selling her prescription pain medication.

The first reason has nothing to do with pain. With respect to the second and third reasons, the ALJ concluded that they made Mascio's "statements that her pain is as limiting as she has alleged less credible." A.R. 496. Yet in determining Mascio's residual functional capacity, the ALJ chose to credit some, but not all, of her statements.

For example, Mascio testified that "she cannot walk more than about 100 feet, can stand for only 30 minutes, and can only lift about 15 pounds." A.R. 495. It appears that the ALJ credited the second statement, by including the sit/stand option in his finding as to residual functional capacity. But despite Mascio's assertion that she was limited in her ability to walk and lift, the ALJ found that Mascio could perform "light work," which includes lifting up to 20 pounds and performing "a good deal of walking." 20 C.F.R. § 416.967(b) (defining "light work"). Nowhere, however, does the ALJ explain how he decided which of Mascio's statements to believe and which to discredit,

18

other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity. The ALJ's lack of explanation requires remand.

D.

Lastly, Mascio maintains that the ALJ erred by not following the so-called "great weight rule" when evaluating her alleged pain. We conclude that no such rule exists in this circuit, and we are not persuaded to adopt it.

According to Mascio, ALJs must afford "great weight" to subjective evidence regarding a claimant's allegation that she suffers from debilitating pain whenever it is uncontradicted or supported by substantial evidence. She relies on two of our unpublished decisions to support this proposition. See Felton-Miller v. Astrue, 459 F. App'x 226, 229 n.1 (4th Cir. 2011); Smith v. Astrue, 457 F. App'x 326, 329 (4th Cir. 2011).

Of course, unpublished opinions in this circuit do not bind us. Moreover, Mascio misreads the cases. Right before the language from Felton-Miller and Smith that Mascio quotes to support her argument, we noted that our cases have recognized "that subjective evidence may be entitled to great weight." Felton-Miller, 459 F. App'x at 229 n.1 (emphasis added); Smith, 457 F. App'x at 329 (emphasis added). Read in context, we were not articulating a per se rule requiring that ALJs afford great

19

weight to subjective evidence or else be reversed. Rather, we were merely stating the obvious--that an ALJ faced with uncontradicted subjective evidence of a claimant's pain is likely to credit that evidence if the ALJ otherwise finds the claimant credible. See Combs v. Weinberger, 501 F.2d 1361, 1363 (4th Cir. 1974). Similarly, an ALJ evaluating a record with substantial evidence to support a claimant's pain allegations may well credit that evidence.

We also note that adopting Mascio's prescriptive "great weight rule" would conflict with the regulations and the deference owed to the agency. The regulations direct an ALJ to take into account "all of the available evidence," not only the claimant's pain allegations. 20 C.F.R. § 416.929(c)(1). In addition, this court must affirm an ALJ's determination when supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). And it is possible for substantial evidence to support both a claimant's pain allegations and the ALJ's decision that the claimant's pain does not affect her ability to work to the extent that the claimant alleges. Because Mascio's proposed "great weight rule" is both unnecessary and unworkable, we decline to adopt it.

20

III.

For the reasons given, we reverse the district court's judgment and remand with instructions to vacate the denial of benefits and remand for further administrative proceedings.

<u>REVERSED AND REMANDED WITH INSTRUCTIONS</u>