**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2078

FAITH V. DENNIS,

Plaintiff – Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:20-cv-00334-JAG)

Argued:  January 24, 2023                          Decided:  April 14, 2023

Before WILKINSON and DIAZ, Circuit Judges, and Max O. COGBURN, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Reversed and remanded by unpublished opinion. Judge Cogburn wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

**ARGUED:**  Richard McIlwaine Cuthbert, CUTHBERT LAW OFFICES, Petersburg, Virginia, for Appellant.  Jonathan Tyler Lucier, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Charles H. Cuthbert, Jr., CUTHBERT LAW OFFICES, Petersburg, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

USCA4 Appeal: 21-2078    Doc: 27    Filed: 04/14/2023    Pg: 2 of 14

MAX O. COGBURN, Jr., District Judge:

Faith Dennis appeals the Social Security Administration's decision denying her application for supplemental security income benefits under Title XVI. Dennis argues that her history of frequent and extensive medical visits (including a handful of ER trips and hospitalizations) should have compelled the ALJ to add an "absenteeism" limitation to Dennis' "residual functional capacity," since her conditions would require her to miss work for treatment at least once a month. Despite the issue's prominence, the ALJ's written decision did not explicitly conclude whether absenteeism would preclude Dennis from substantial gainful employment. Still, a magistrate judge and the district court decided that substantial evidence supported the ALJ's (unstated) conclusion that an absenteeism limitation was not warranted. Dennis now appeals.

For the following reasons, we find that the ALJ's failure to discuss record evidence regarding Dennis' absenteeism "frustrate[s] our ability to conduct meaningful appellate review." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019). Thus, we reverse and remand with instructions consistent with this opinion.

I.

A.

Dennis was diagnosed with lupus when she was 14. A.R. 40. She was 25 years old at the time of her hearing in this matter. A.R. 39. Dennis suffers from systemic lupus erythematosus, fibromyalgia, borderline intellectual functioning, major joint dysfunction, migraine headaches, avascular necrosis of the ankles, anemia, kidney disease, bullous disease, and peripheral vascular disease.

3

Dennis graduated high school and earned an associate degree, but she has never worked. Before her most recent application, and as early as 2007, she had applied for Social Security benefits four times and was denied each time. Her fourth claim was denied in June 2016, and the Appeals Council affirmed that denial on March 6, 2017. On March 29, 2017, Dennis submitted a fifth application for benefits, the one at issue in this case. The Social Security Administration again denied Dennis' claim, initially and on reconsideration. Dennis then hired counsel and requested a hearing before an ALJ.

Before the hearing, Dennis submitted medical records from her then-sole provider, the VCU Medical Center, dating back to March 2016.[1] After the hearing, Dennis also submitted records from Montefiore Jack Weiler Hospital in New York, through July 2018, which her counsel had not received in time for the hearing. The medical records show dozens of visits to health-care providers from March 2016 to July 2018. *See* Appellant's Br. at 5–11 (table summarizing Dennis' treatment dates). Most notably, Dennis visited the emergency room six times—twice in 2016 and four times in 2018:

> • May 29, 2016: Dennis went to the VCU ER complaining of pneumonia, a lupus flare, a MRSA infection, and other ailments. She was admitted to the hospital, treated there for nearly three weeks, and discharged June 17, 2016.

---

[1] Dennis is eligible to be paid benefits only starting in April 2017, the month after her application date. *See* 20 C.F.R. §§ 416.335, 416.501. But the regulations require the ALJ to consider (and Dennis to submit) her "complete medical history" dating back to at least March 2016, "the 12 months preceding the month" she filed her application. 20 C.F.R. § 416.912(b)(1). The ALJ said she considered all the medical records Dennis submitted. A.R. 16.

4

• December 21, 2016: Dennis went to the VCU ER, again for pneumonia and a lupus flare, along with migraines and other pain and symptoms. She was again admitted and then discharged three days later, on December 24, 2016.

• January 22, 2018: Dennis went to the VCU ER complaining of chest pain. She was discharged the same day.

• March 17, 2018: Dennis went to the VCU ER for chest pain and was again discharged the same day.

• July 16, 2018: In New York, Dennis went to the Montefiore ER, complaining of pain and weakness. The hospital admitted her, citing a lupus flare and fibromyalgia flare. She was discharged four days later, on July 19, 2018.

• July 21, 2018: Just over a day after being discharged, Dennis went back to the Montefiore ER and was again admitted because of a lupus flare. She was treated in the hospital for a week and was discharged July 27, 2018.

In sum, Dennis was admitted four times out of her six ER visits, for a total of 24 days (17 weekdays) in 2016 and 11 days (9 weekdays) in 2018. On two additional dates, she went to the ER and was discharged the same day.

Dennis' medical records also show dozens of scheduled visits to her health-care providers in the VCU system, many of which were follow-up appointments from her ER visits and from previous appointments. These were in various departments, including (most commonly) rheumatology, ophthalmology, orthopedics, radiology, physical therapy, and neurology. All of these appointments were on weekdays.

5

Between these appointments, her ER visits, and hospitalizations, Dennis contends that she received medical treatment "on 104 separate days."[2] Appellant's Br. at 14. Along with the VCU and Montefiore records, Dennis also submitted stand-alone opinions. The first was from Linda Scott, Ph.D., who evaluated Dennis in 2011 in connection with one of her earlier Social Security applications. In her written opinion about Dennis' psychological and emotional capabilities, Dr. Scott concluded that Dennis "is able to maintain regular attendance at a workplace, although she would need assistance from family." A.R. 327.

Dennis also submitted an opinion dated December 27, 2017 from Dr. Abhishek Nandan, M.D., her primary VCU rheumatologist. *See* A.R. 762–69. Relevant here, Dr. Nandan indicated that Dennis' impairments would cause her to be absent from work "[m]ore than twice a month." A.R. 763.

At the hearing before the ALJ, vocational expert ("VE") Patricia Scutt testified to a hypothetical question as follows:

> Q. [ALJ] So what is the maximum amount of days you can be absent from a job?
> A. [Ms. Scutt] In an unskilled position, which the sedentary category is that you asked for, employees, for the first year, have a set number of days off. They're lumped into personal and sick. And they range from seven to ten in the first year. Anything over that would be subject to firing.

---

[2] A review of the record indicates the correct number is actually 71 days. Dennis also states her "emergency room visits/hospitalizations total[ed] 76 days," Appellant's Br. at 14, but a review of the record indicates that Dennis' ER visits and the resulting hospitalizations add up to 38 days. Ultimately, these counting discrepancies don't impact our holding that the ALJ should have engaged with the absenteeism issue and evidence.

6

A.R. 59–60. The record does not contain any testimony or opinions rebutting the VE's testimony that missing more than 10 days in a year would subject an employee in Dennis' position to being fired.

The issue of absenteeism came up in the ALJ's other questions to the VE, too. And at the end of the hearing, Dennis' counsel explained that he was still waiting on the Montefiore records, which he argued were relevant because they would show Dennis was "in a hospital for 24 day -- plus days during that period, then, of course, she wouldn't be capable of [substantial gainful employment] objectively." A.R. 65. Four days after the hearing, Dennis' counsel received and submitted the Montefiore records.

B.

Before turning to the ALJ's decision and Dennis' request for judicial review, we first outline the approach that the Commissioner takes to evaluating social security disability claims.

In evaluating whether an individual is disabled, the Commissioner uses a five-step process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, an ALJ evaluates, in sequence, whether the claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)).

At step three, if a claimant fails to demonstrate that they have a disability that meets or medically equals a listed impairment, the ALJ must assess the claimant's RFC before

7

proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]." *Lewis v. Berryhill*, 858 F.3d 858, 861–62 (4th Cir. 2017) (alterations in original) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). An ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996)); *see also* 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

For the first four steps, the claimant has the burden of production. *Monroe v. Colvin*, 826 F.3d 176, 179–80 (4th Cir. 2016). "If the claimant fails to carry that burden at any step, she is determined not to be disabled." *Lewis*, 858 F.3d at 861. "If the claimant does meet her burden of proof, the burden then shifts to the Commissioner at step five." *Id.* If a determination of disability can be made at any step, then the ALJ need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## C.

In this case, the ALJ explained and applied this five-step sequential evaluation process. In the first three steps, the ALJ found: (1) Dennis had not engaged in substantial gainful employment; (2) she suffered from six severe impairments (systemic lupus erythematosus, borderline intellectual functioning, major joint dysfunction, migraine headaches, avascular necrosis of the ankles, and fibromyalgia) and her other impairments, including anemia, kidney disease, and others, were not severe; and (3) Dennis' individual

8

and combined impairments are not so severe that she is categorically disabled under the regulations.[3]

In discussing Dennis' RFC at step three, the ALJ specifically mentioned two of Dennis' four hospitalizations. The ALJ noted that Dennis was "hospitalized from December 21, 2016 through December 24, 2016, for chest pain from pneumonia and pleurisy," A.R. 22, and that she also "went to the ER with complaints of generalized weakness and pain in the chest and upper extremities on July 15, 2018," and "was discharged on July 19, 2018," A.R. 23. Despite noting two hospitalizations, the ALJ then inconsistently proclaimed, "[t]he evidence shows the claimant only had to be hospitalized once, when she had a flare that was not responsive to her at-home medications." A.R. 23. This was apparently a reference to the first Montefiore ER visit.

The ALJ then discussed some of the medical opinions in the record. First, she summarized Dr. Scott's 2011 opinion, including that Dennis "is able to maintain regular attendance in a work place although she would need assistance from family." A.R. 24. But the ALJ found that Scott's opinion was "not persuasive" because it was not "consistent with the claimant being able to obtain a driver's license, handle her personal care, do her own shopping, cook, clean, do laundry, or take a bus out-of-state to New York." A.R. 24–25.

The ALJ then summarized Dr. Nandan's opinions. The ALJ noted Dr. Nandan's opinion—among others—that Dennis "would be absent from work as a result of her

---

[3] Dennis does not challenge these findings on appeal.

9

impairments of treatment more than twice a month." A.R. 25. But again, the ALJ found that "[n]either of Dr. Nandan's opinions are very persuasive" because "this level of limitation is not supported by the objective record. The claimant's response to medication treatment and her daily activities do not support such significant limitations." A.R. 25.

Finally, the ALJ summarized and credited the VE's testimony that there were jobs available in the national economy for someone with Dennis' limitations. The ALJ found Dennis to be not disabled and denied benefits.

## D.

Dennis filed a complaint in the United States District Court for the Eastern District of Virginia, seeking judicial review of the ALJ's decision. Dennis did not contest the ALJ's finding that she was physically able to perform the minimal exertional requirements of sedentary work. J.A. 14–25. Instead, she asserted a single argument: that the ALJ should have found her disabled by virtue of the time she would spend attending medical appointments and emergency treatment. J.A. 21.

In a Report and Recommendation, a magistrate judge found that "Plaintiff's residual functional capacity d[id] not include a limitation regarding Plaintiff's absenteeism and substantial evidence supported the residual functional capacity limitations endorsed by the ALJ." J.A. 68. The Report and Recommendation noted that "[b]eyond Plaintiff's medical record revealing doctor's appointments in the past, and the unpersuasive and cursory opinion rendered by Dr. Nandan, additional evidence [was] lacking regarding Plaintiff's possible absenteeism." J.A. 64. The Report and Recommendation also stated that there was no suggestion in the record that "Plaintiff's need to attend scheduled specialist

10

appointments, alone, would necessitate absences of as much as, or up to, one day a month" and "the record contain[ed] no evidence regarding Plaintiff's requirement to attend many appointments at specific times or days, or that Plaintiff's appointments would otherwise interfere with a work schedule." J.A. 65. As such, the Report and Recommendation stated that the ALJ "did not err by failing to include an absenteeism limitation in Plaintiff's residual functional capacity." J.A. 65. The Report and Recommendation also held that because "the ALJ's third hypothetical, without the added absenteeism limitation, properly captured Plaintiff's residual functional capacity, the ALJ appropriately relied on [the VE's] answer to the hypothetical." J.A. 68. Accordingly, the "ALJ did not err by failing to include Plaintiff's absenteeism in the hypothetical question posed and ultimately relied on." J.A. 68.

Dennis objected to the Report and Recommendation. J.A. 70–81. The district court overruled the objections and adopted the Report and Recommendation. J.A. 99–100. The district court concluded that substantial evidence supported the ALJ's formulation of Dennis' RFC and that the ALJ provided a logical explanation for how she arrived at her residential functional capacity findings. J.A. 94–98. In particular, the court concluded that "the plaintiff's record of mostly scheduled, non-emergency medical appointments—without more—does not require the ALJ to assume or address speculative future absences." J.A. 97. The district court entered judgment in the Commissioner's favor. J.A. 99–100.

Dennis timely appealed to this Court.

II.

A.

11

We review the district court's decision de novo, and we will affirm the ALJ's disability determination if the ALJ has applied the "correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020) (quoting *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). This Court's substantial evidence review applies only to "[t]he agency's factual findings," not to whether the "ALJ has applied correct legal standards." *Shinaberry*, 952 F.3d at 120. And an ALJ's failure to "sufficiently explain her conclusions" about a claimant's residual functional capacity is an "error[] of law" that warrants reversal and remand. *Thomas*, 916 F.3d at 311.[4]

## B.

Reversal and remand is appropriate here because we find that the ALJ failed to discuss and explain the record evidence regarding Dennis' absenteeism. Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the ALJ. Here, the ALJ's failure to make requisite findings or to articulate the bases for the ALJ's conclusions makes our task impossible.

In *Hall v. Harris*, the ALJ "made no findings as to whether [the claimant] also had nonexertional limitations affecting her capacity to perform sedentary work. These are

---

[4] The parties frame Dennis' arguments as "substantial evidence" challenges. *See* Appellant's Br. at 2; Appellee's Br. at 2. But since the ALJ never made an express conclusion (or provided an explanation) about absenteeism, this is more properly understood as a failure-to-explain case, subject to de novo review.

necessary in determining a claimant's residual functional capacity." 658 F.2d 260, 266 (4th Cir. 1981). We held that this failure to make findings alone necessitated a remand.

Similarly, here, the ALJ's failure to discuss the record evidence regarding Dennis' absenteeism results in our inability to provide meaningful review. There is evidence supporting Dennis' need to miss work in the administrative record, and the ALJ's decision does not discuss this evidence, nor does the ALJ's decision adequately explain why the evidence should be rejected. Indeed, the ALJ did not offer any reasons for rejecting or discounting the frequency of Dennis' medical treatment. Nowhere in the denial did the ALJ address: (1) the frequency of Dennis' medical treatment, (2) how the frequency of Dennis' medical treatment would impact absenteeism, or (3) how Dennis' frequent medical treatment would impact the VE's testimony that missing more than 7 to 10 days per year "would be subject to firing." *See* A.R. 16–27. This was error because we can only guess why the ALJ failed to address the obvious implications of Dennis' frequent medical treatment.

Further, we cannot determine whether the hypothetical question posed to the VE included all of Dennis' functional limitations, as it needed to do in order to be useful, because the ALJ never discussed the evidence in the administrative record related to Dennis' absenteeism. *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." (alteration and internal quotation marks omitted)).

13

We must, therefore, reverse the district court's summary judgment and vacate and remand to the ALJ to correct her failure to make or explain a finding on absenteeism. On remand, the ALJ must discuss the record evidence regarding the frequency of Dennis' need for medical treatment and how Dennis' absenteeism affects her ability to work.[5] The ALJ must conduct this analysis before moving on to steps four and five, concerning Dennis' ability to perform past work, and her ability to perform other work that exists in significant numbers in the national economy. *See Mascio*, 780 F.3d at 636.

### III.

Because the record before us does not permit meaningful review of the ALJ's determination, we must reverse the district court's judgment and remand this case for further consideration in accordance with this opinion.

*REVERSED AND REMANDED*

---

[5] Dennis asserts that "the record establishes an entitlement to benefits based on the objective evidence and unrebutted testimony of the VE. Thus, the law compels the award of benefits without remand." *See* Appellant's Br. at 30. However, the record does not conclusively "establish[] [her] disability and thus her legal entitlement to disability benefits." *Arakas v. Comm'r*, 983 F.3d 83, 112 (4th Cir. 2020). Rather, in failure-to-explain cases such as this one, the proper disposition is to remand to the ALJ for an explanation. *See, e.g., Thomas*, 916 F.3d at 312–13; *Mascio*, 780 F.3d at 638.