**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1555**

---

DONNA MACKLIN WARD,

       Plaintiff − Appellant,

    v.

LELAND C. DUDEK, Commissioner of Social Security,

       Defendant – Appellee.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever, III, District Judge.  (5:20−cv−00071−D)

---

Submitted:  November 9, 2023                      Decided:  April 29, 2025

---

Before DIAZ, Chief Judge, WYNN, Circuit Judge, and KEENAN, Senior Circuit Judge.

---

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion in which Judge Wynn and Senior Judge Keenan joined.

---

**ON BRIEF:**  W. Daniel Mayes, SMITH, MASSEY, BRODIE, GUYNN & MAYES, Aiken, South Carolina, for Appellant.  Brian C. O'Donnell, Associate General Counsel, Katie M. Gaughan, Supervisory Attorney, Office of Program Litigation, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Michael F. Easley, United States Attorney, Raleigh, North Carolina, David N. Mervis, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

Donna Macklin Ward appeals the district court's judgment affirming the Social Security Administration's denial of her application for benefits. Ward suffered a work-related accident in May 2016 that caused injuries to her shoulders, her back, and her right knee. The accident also exacerbated her depression and anxiety. She applied for disability benefits soon after.

The administrative law judge ("ALJ") denied her application. He found that Ward had several severe physical and mental impairments but had the residual functional capacity to perform a reduced range of light work. Ward sued for review of the ALJ's benefits denial. A magistrate judge recommended upholding the ALJ's decision, and the district judge did so.

On appeal, Ward argues that the ALJ didn't adequately explain his findings on Ward's residual functional capacity and applied an erroneous standard in disregarding evidence that supported Ward's subjective testimony. Finding no error, we affirm.

I.

Ward, a college graduate in her 50s, worked as a mail carrier from 1998 until May 27, 2016, when she sustained work-related injuries to her shoulders, low back, and right knee. In August 2016, she applied for Social Security disability benefits. The Commissioner denied her application and denied Ward's request to reconsider. Ward then requested a hearing before an ALJ.

2

A.

Before the hearing, the parties submitted reports from several state medical experts on Ward's physical and mental health conditions and a Third-Party Function Report from Ward's husband. At the hearing, the ALJ heard testimony from Ward and an impartial vocational expert.

The ALJ denied Ward benefits in a written decision. First, he outlined the "five-step sequential evaluation process for determining whether an individual is disabled." J.A. 139. The steps query whether the claimant (1) is doing substantial and gainful work, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past relevant work, and, if not, (5) can perform other work. *See* J.A. 139–40 (citing regulations).

"If the claimant's impairment or combination of impairments is of a severity to meet . . . the criteria of a listing and meets [a] duration requirement," then "the claimant is disabled," and benefits are due. J.A. 139. Otherwise, the inquiry proceeds to steps four and five, and the ALJ evaluates the claimant's "residual functional capacity," that is, "the most [the claimant] can still do despite [the physical and mental] limitations" caused by his or her "impairment(s)[] and any related symptoms, such as pain." 20 C.F.R. § 404.1545(a)(1).

At steps one through three, the ALJ determined that Ward hadn't worked since May 27, 2016; that she had six severe impairments: degenerative disc disease, left shoulder rotator cuff tendinitis with AC joint osteoarthritis, a right knee medial meniscus tear, hip bursitis, depression, and anxiety; and that her impairments didn't meet or equal the

requirements of a listed impairment. So the ALJ went on. At steps four and five—the findings that Ward challenges on appeal—the ALJ concluded that Ward had the residual functional capacity to perform light work, subject to certain restrictions.

In doing so, the ALJ referenced Ward's multiple physical and mental health examinations that detailed mild to moderate symptoms; the various treatments she had received; opinion evidence from medical experts, Ward's doctor, and her husband; and Ward's own testimony about her ability to accomplish daily tasks. Evaluating Ward's testimony, the ALJ explained that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [he] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." J.A. 144.

The ALJ found that Ward's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." J.A. 145.

For example, the ALJ recounted that Ward testified that she "cooks breakfast"; "handle[s] her personal care"; "could sit at her computer and watch television"; "could vacuum, dust, and do the dishes"; and "grocery shops, once every two weeks, but only to purchase a few items." J.A. 145. Ward's ability to perform these tasks cut against her "allegations of symptoms so severe as to preclude work." J.A. 145.

The ALJ then turned to Ward's imaging results and physical examinations. The imaging results "revealed multilevel degenerative changes in the lumbar spine," J.A. 146, but Ward's treating physicians recommended conservative treatment.

4

Ward's physicians administered injections that provided "excellent relief," and Ward showed "a symmetric bipedal gait" and "a painless range of motion in the bilateral upper and lower extremities, hips, and knees" during physical examinations. J.A. 146. The ALJ also recounted that Ward could flex and extend her lumbar spine "without restriction or pain," and that she declined the physical therapy that was offered. J.A. 146.

All told, the ALJ concluded that Ward could "perform light work with the limitations of never climbing ladders, ropes, or scaffolds, occasionally climbing ramps and stairs, . . . occasionally balancing, stooping, kneeling, crouching, and crawling," "occasionally reach[ing] with the non-dominant upper extremity," and "avoiding moderate exposure to hazards." J.A. 147.

The ALJ also considered Ward's history of depression and anxiety. As he did with Ward's physical conditions, the ALJ reviewed multiple types of evidence about these conditions, including Ward's subjective testimony, her psychiatric and neurological examinations, and a behavioral health assessment.

The record evidence showed that, during various examinations, Ward was "calm and cooperative"; her "thought process was logical, linear, clear, coherent, and goal-directed"; she could "fully attend [the examinations] without fluctuations in consciousness"; and Ward's "immediate, short-term, and long-term memory, along with the ability to recall, were intact." J.A. 148. And Ward's own statements indicated that the new medication she was taking "was working and [her] symptoms were improving." J.A. 148.

5

Based on this evidence, the ALJ found that Ward's "limitations of understanding, remembering, and carrying out simple instructions, sustaining concentration, attention, and pace" were nonetheless "sufficient to carry out . . . simple instructions over the course of an eight-hour workday and at two-hour intervals." J.A. 148. The ALJ concluded that Ward had

> the ability to work in proximity to, but not in coordination with, co-workers and supervisors, the ability to work in a low stress setting, while making only simple, work-related decisions, with few or no changes in the work setting, having only superficial contact with the public, and having no dealings with emergent situations, as an essential function of the job.

J.A. 148.

In reaching these conclusions, the ALJ explained why he gave more weight to some expert opinions than others. He gave "partial weight" to the opinion of Dr. Dakota Cox—a state agency medical consultant—because although the record evidence "as a whole" supported her findings about Ward's shoulder and disc impairments and ability to perform light work, the evidence also betrayed that Ward had "more restrictive . . . limitations" than Dr. Cox allowed. J.A. 149. The ALJ gave "[l]ittle weight" to the opinion of Dr. Melvin Clayton—another state agency medical consultant—because the evidence wasn't consistent with Dr. Clayton's finding that Ward could "perform medium work." J.A. 149. The ALJ likewise assigned "[l]ittle weight" to the opinion of Dr. Chawki Lahoud—Ward's personal physician—because those "opinions were provided on a check-box form, without any medical explanations or citations to objective findings." J.A. 149.

Finally, the ALJ gave only "[p]artial weight" to Ward's husband's opinions because he wasn't "medically qualified to determine [Ward's] functional capabilities." J.A. 150.

6

Ward's husband said that Ward "was not socially active and [got] frustrated around people," and that she "had difficulties completing tasks and with concentration." J.A. 142. But the ALJ contrasted these statements with a mental status examination that found Ward was "calm and cooperative," and "was able to fully attend [the examination] without fluctuations in consciousness." J.A. 142.

The ALJ also considered Ward's husband's observations that Ward was largely capable of "personal care" and "could prepare cereal and eggs[] for breakfast, and sandwiches, soups[,] and salads for dinner." J.A. 150. Ward, said her husband, "could do laundry on the weekends, with assistance"; "drive a car and shop at the store for food and personal items"; and "pay bills, count change, handle a savings account, and use a checkbook." J.A. 151.

"In sum," said the ALJ, "the objective findings on clinical examinations and in diagnostics testing, the degree of treatment, and [Ward's] own self-reported limitations in functioning" indicated that, although Ward couldn't return to her past work as a mail carrier, she could find other light or sedentary work. J.A. 151–52. He therefore denied benefits.

## B.

Ward brought this civil case to challenge the ALJ's decision. A magistrate judge recommended that the district judge deny Ward's motion for judgment on the pleadings and grant the Commissioner's motion for the same, which would uphold the ALJ's ruling. *See Ward v. Kijakazi*, 5:20-CV-00071, 2022 WL 495189, at *1 (E.D.N.C. Jan. 13, 2022).

7

Ward argued to the magistrate judge that the ALJ "erred in determining his [residual functional capacity finding] by failing to explain the limitations he assessed." J.A. 110. She asserted that the ALJ needed to provide "a function-by-function analysis" in his residual functional capacity analysis. J.A. 112 (cleaned up).

The magistrate judge disagreed and recommended finding that substantial evidence supported the ALJ's determinations and that an express function-by-function analysis wasn't required. In doing so, the magistrate judge reviewed the ALJ's decision, the administrative record, and our case law rejecting a "per se rule requiring remand where the ALJ does not perform an explicit function-by-function analysis." *Ward*, 2022 WL 495189, at *5 (cleaned up). The magistrate judge was satisfied that the ALJ had "a sufficient basis for his conclusions and establish[ed] how the evidence support[ed] his findings." *Id.*

The magistrate judge separately recommended rejecting Ward's arguments that the ALJ did not address her physical and mental limitations and overlooked evidence (including her testimony) supporting those limitations. The magistrate judge found that the ALJ "discussed the evidence of Ward's mental health conditions," as well as evidence showing "that Ward's hip, knee, and lower extremity conditions [were] not as disabling as she claim[ed]." *Id.* at *7. So the magistrate judge recommended finding no error in the ALJ's residual functional capacity determinations or in the ALJ's evaluation of Ward's subjective statements. On this latter point, the magistrate judge concluded that the ALJ had indicated "where the evidence did not track Ward's statements." *Id.* at *8.

The magistrate judge therefore recommended that the district court uphold the ALJ's decision denying benefits.

Ward objected to the magistrate judge's recommendation on the grounds that the ALJ failed to perform a "function-by-function assessment before finding that [she] [could] perform light work" and that the ALJ failed to "properly evaluate[] [Ward's] statements and activities." J.A. 130.  Unpersuaded, the district judge found that the magistrate judge and ALJ "applied the proper legal standards" and that "substantial evidence support[ed] the ALJ's analysis." *Ward v. Kijakazi*, No. 5:20-CV-71, 2022 WL 489937, at *2 (E.D.N.C. Feb. 17, 2022).  Accordingly, the district judge overruled Ward's objections and entered judgment for the Commissioner.

This appeal followed.

## II.

We will uphold the ALJ's disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020).  Substantial evidence "means—and only means—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  We, therefore, do "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [our] judgment for that of the ALJ." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (cleaned up).

Ward raises two claims on appeal.  First, she argues that the ALJ did not explain his findings about Ward's residual functional capacity.  Next, Ward argues that the ALJ didn't use the proper legal standard to evaluate her subjective complaints, which resulted in the

9

ALJ rejecting Ward's statements about her pain, even where evidence supported them. We take each argument in turn.

## A.

Social Security Ruling 96–8p "explains how adjudicators should assess residual functional capacity." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Under that ruling, the ALJ's "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Id.* (cleaned up).[1] This assessment also "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (cleaned up). While we've "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," we've cautioned that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory

---

[1] We've previously explained that,

> [t]he listed functions are the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions.

*Mascio*, 780 F.3d at 636 n.5 (quoting 20 C.F.R. § 416.945(b)-(d)).

10

evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (cleaned up).

Ward contends that the ALJ impermissibly began with his conclusion that Ward was capable of a light range of work before engaging in the function-by-function analysis. She also argues that the ALJ provided no "specific analysis" to enable us to review the ALJ's finding "that Ward did not have significant restrictions in standing or walking, or that she could lift up to 20 pounds." Appellant's Br. at 15–16. On this point, Ward relies on her subjective statements and her doctor's questionnaire.

We quickly dispose of Ward's first challenge. The Commissioner argues, and we agree, that all the ALJ did was use a common legal writing structure: he briefly stated his conclusion—that Ward is capable of limited light-exertional work—before providing the substantive analysis underlying it. *See* Appellee's Br. at 22–23. The ALJ then repeated his conclusion, which was based on the evidence he'd recited.

Ward's second challenge presents a closer question, but we're satisfied that the ALJ sufficiently addressed each of Ward's conditions and explained why those conditions didn't prevent her from doing light work.

Ward focuses her argument on her January 2018 lumbar MRI, which "show[ed] multilevel degenerative changes in the lumbar spine from L3-L5, most significantly at L3-4 with left foraminal disc protrusion." Appellant's Br. at 17. Those changes "result[ed] in moderate L neuroforaminal narrowing, caus[ed] lumbar radiculopathy, and require[d] an injection." *Id.* And Ward told her medical providers that her back pain was "exacerbated by activity," including "standing." *Id.*

11

Ward uses that record evidence to assert that the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusions" because the ALJ didn't explain "how a lumbar MRI . . . support[ed] his assessment that [Ward had] no significant standing and walking restrictions." *Id.* Ward also claims that the ALJ improperly collapsed his analysis of Ward's back impairment with her knee impairment. *Id.* at 19.

We aren't persuaded.

The ALJ's decision repeatedly acknowledged the MRI and the "multilevel degenerative changes" in Ward's lumbar spine, *see* J.A. 146, 149, which showed that Ward's degenerative disc disease restricted her ability to do light work, J.A. 147. The ALJ also evaluated the persuasiveness of two state agency medical consultants' opinions based on their assessments of Ward's degenerative disc disease. *See* J.A. 149.

Contrary to Ward's argument, the ALJ "[s]how[ed] [his] work" in explaining why Ward's degenerative disc disease wasn't incompatible with his finding that she was still capable of light work with limitations. *Patterson v. Comm'r Soc. of Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). The ALJ's reasoning here allows "us to review meaningfully [the] conclusions" the ALJ drew about Ward's work capabilities given her degenerative disc disease, both separately from her other conditions and in conjunction with them. *Mascio*, 780 F.3d at 636–37.

Ward next argues that, with respect to Ward's mental residual functional capacity, the ALJ erred by not specifically explaining how he concluded "that Ward is able to sustain abilities for two-hour intervals, deal sufficiently with co-workers and supervisors to maintain employment, avoid excessive time off task due to mental impairment, and

12

adequately deal with work stresses." Appellant's Br. at 21. But the ALJ did supply such an explanation.

The ALJ, for example, considered Ward's subjective statements that she "was constantly worrying"; often "los[t] control"; felt anxious "when driving or when dealing with others"; struggled to concentrate; experienced "feelings of worthlessness and hopelessness"; and "had fatigue and problems sleeping." J.A. 147–48. But the ALJ also accounted for Ward's other subjective statements and the objective medical evidence—for instance, that she was "alert and oriented to person, place, and time" and "calm and cooperative" with the medical staff during various examinations. J.A. 148.

During those examinations, Ward's "language was intact and well formed," her "thought process was logical, linear, clear, coherent, and goal-directed," and her "immediate, short-term, and long-term memory, along with the ability to recall, were intact." J.A. 148. At the time, Ward was taking a new medication, and she reported the medication "was working and [her] symptoms were improving." J.A. 148.

Then, when crafting Ward's activity level, the ALJ carved out limitations. He found that Ward could "work in proximity to, but not in coordination with, co-workers and supervisors" and "in a low stress setting, while making only simple, work-related decisions." J.A. 148. And he concluded that there should be "few or no changes in [Ward's] work setting" and that Ward should have "only superficial contact with the

13

public" and "no dealings with emergent situations."[2]  J.A. 148.  That explanation connects the evidence to the ALJ's conclusion that Ward could do light work, subject to limitations.

In short, the ALJ adequately supported and explained his findings on both Ward's physical and mental residual functional capacity.

B.

Ward next argues that the ALJ didn't properly consider her subjective statements about her physical and mental health symptoms.  We disagree.

When evaluating a claimant's subjective complaints, "ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and [Social Security Ruling] 16–3p." *Arakas*, 983 F.3d at 95 (citation omitted).  First, "the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (cleaned up).  Next, if the ALJ finds a medically determinable impairment, the ALJ "must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (cleaned up).

The ALJ hewed to this two-step framework.  First, he "[found] that [Ward's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." J.A. 145.  But he also concluded that "[Ward's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." J.A. 145.

---

[2] Ward doesn't challenge the ALJ's determination that such a job exists or that the Commissioner met his burden in demonstrating that such a job existed.

14

These findings too are supported by substantial evidence. Ward testified that she suffered from symptoms related to depression and anxiety. The ALJ recounted and considered that subjective testimony.

Then, in finding portions of Ward's testimony inconsistent with the record describing her physical symptoms, the ALJ reviewed Ward's other subjective statements and her medical records in detail. *See* J.A. 145–47. Ward seems to argue that the ALJ improperly required her to corroborate her subjective statements with objective evidence. And to be sure, it's improper for an ALJ to "increase[] [a claimant's] burden of proof by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Arakas*, 983 F.3d at 96.

But the ALJ didn't do that here.

Instead, he looked to Ward's other statements—about her ability to care and cook for herself, watch television, shop for groceries, and perform light cleaning tasks—as well as to Ward's husband's statements about her limitations. The ALJ then coupled those statements with the objective medical evidence that supported Ward's ability to perform light work.

In doing so, the ALJ explained the weight he assigned to the various expert and other opinions. And he reviewed the imaging results and examinations in the record, including evidence of Ward's full and painless range of motion in her extremities, normal gait, negative straight leg raises, relief from pain after steroid injections, and reduced pain after knee surgery.

15

The ALJ was entitled to evaluate Ward's statements about the intensity, persistence, and limiting effects of her physical and mental health symptoms to determine if Ward was disabled, and to do so alongside other record evidence of her disability. Given the ALJ's explanation of the evidence, and that "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with [the] reviewing court," we decline to disturb the ALJ's decision. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

## III.

Because the ALJ adequately explained his decision denying Ward Social Security disability benefits, and rested on substantial evidence in doing so, we affirm his ruling. We dispense with oral argument because the facts and legal contentions are sufficiently presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*